**FLO–CON SYSTEMS, INC., Plaintiff,**

v.

**PENSION BENEFIT GUARANTY CORPORATION, Defendant– Third Party Plaintiff,**

v.

**Vesuvius USA, Corporation, Vesuvius Crucible Company, Inc., and Cookson America, Inc., Third Party Defendants.**

No. 97–2235.

United States District Court, C.D. Illinois.

Dec. 11, 1998.

996

Lorna K. Geiler, Meyer Capel Hirschfeld·Muncy, Jahn & Aldeen, Champaign, IL, Mark A. Dingley, W. James McKay, Adler Pollock & Sheehan Incorporated, Providence, RI, for Flo–Con Systems Inc., plaintiff.

Mark Anthony Amadeo, Pension Benefit Guaranty Corp., Washington, DC, for Pension Benefit Guaranty Corporation, defendant.

Lorna K. Geiler, Rochelle A. Funderburg, Meyer Capel Hirschfeld Muncy, Jahn & Aldeen, Champaign, IL, Mark A. Dingley, W. James McKay, Adler Pollock & Sheehan Incorporated, Providence, RI, for Vesuvius USA, Corporation, Vesuvius

Crucible Co., Inc., Cookson America, Inc., third-party defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BAKER, District Judge.

This controversy involves application of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, (ERISA) and related sections of the Internal Revenue Code (Code). The plaintiff, Flo–Con Systems, Inc., (Flo–Con) seeks a declaratory judgment that it terminated its Retirement Plan For Hourly Employees (Plan) in conformity with the requirements of ERISA and related Code provisions. The defendant, Pension Benefit Guaranty Corporation, (PBGC) sees the matter differently.

It counterclaims that Flo–Con's termination of the Plan violated the provisions of ERISA and the Code. PBGC argues that Flo–Con applied an unlawful interest rate in annuity calculation that shortchanged the pensioners and gave Flo–Con a windfall. The material facts of the case are not in dispute and each side has moved for summary judgment.[1] The court now grants PBGC's motion for summary judgment, and denies Flo–Con's summary judgment motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the district court views "all evidence in the light most favorable to the party opposing summary

judgment." *Wilson v. Williams,* 997 F.2d 348 (7th Cir.1993).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party there is no 'genuine' issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## UNDISPUTED FACTS

Flo–Con is the contributing sponsor and the administrator of the Plan within the meaning of ERISA. PBGC is the government corporation charged with administering the pension plan termination insurance program under Title IV of ERISA. The Plan was established by Flo–Con beginning January 1, 1988 and is a tax qualified, single employer, defined benefit pension plan covered by Title IV of ERISA.

On November 6, 1992 Flo–Con filed a request with the IRS seeking a determination letter on the continued qualification for favorable tax status of the Plan upon termination. Flo–Con told the IRS what actuarial assumptions Flo–Con would use in computing the present value of lump sum distributions.

On November 24, 1992 Flo–Con notified PBGC of Flo–Con's intention to make a standard termination of the Plan effective August 31, 1992 and asked for a review of the Plan termination. The Plan actuary estimated that the Plan had sufficient assets to pay all benefit liabilities and was slightly overfunded.

---

1. PBGC joined the third party defendants and they have answered and have the same posi-

tion and counsel as Flo–Con.

PBGC responded in a letter of December 23, 1992. PBGC wrote that absent a notice of noncompliance from PBGC within sixty days, Flo–Con "must commence distribution of assets to close out the plan as soon as practicable." Flo–Con was to stop distribution and immediately notify PBGC only if Flo–Con found that assets "were not sufficient to provide all benefit liabilities." PBGC warned in its letter that terminations were subject to audit and that all relevant documents and materials were to be maintained for six years.

On January 28, 1993 the IRS sent Flo–Con a favorable tax qualification letter regarding the termination of the Plan. In that letter the IRS warned, "We have considered the information you sent us and have determined that your termination of this plan does not adversely affect its qualification for federal tax purposes. Please note that this is not a determination regarding the effect of other federal or local statutes."

Between May and October 1993, Flo–Con distributed Plan benefits to participants in the form of lump sum payments. In November 1993, Flo–Con made a post-distribution certification report to PBGC that November 10, 1993 was the final date of distribution of the Plan assets and that all benefit liabilities were satisfied. In late November 1995, PBGC notified Flo–Con of PBGC's selection of the Plan termination for audit. The notice ended with the admonition, "We will notify you of the audit results as well as when the case file is closed."

On April 15, 1996 PBGC notified Flo–Con that the random audit of three participants revealed that the valuation of the lump sum distributions was lower than it should have been because of the application of improper interest rates. PBGC ruled that the error required recalculation for all the Plan participants and immediate additional distributions to the appropriate participants. Flo–Con objected to PBGC's determination and requested reconsideration.

On July 8, 1997 PBGC responded to Flo–Con's request for reconsideration and affirmed the agency's initial determination. This suit was filed on October 1, 1997, seeking a declaratory judgment that Flo–Con terminated that Plan in accordance with the requirements of ERISA and related Code provisions

## APPLICABLE PLAN TERMS, STATUTES, AND REGULATIONS

The Plan definition of "Actuarial Assumptions" or "Actuarial Equivalents," amended and restated effective January 1, 1992, provides in pertinent part:

> Except as otherwise specifically required by law and provided herein, whenever the Plan calls for the computation of a present value ... an annual 6% rate of interest ... shall be used, except any lump-sum equivalencies, which shall be determined on the basis of the Pension Benefit Guaranty Corporation rate used to calculate lump-sum benefits on Plan termination as such rates may be in effect on the first day of each Plan Year, or in the event of Plan termination, on the first day of the Plan Year preceding such termination.

Flo–Con, supposedly following the Plan and PBGC regulations, computed the present value of lump sum distributions by using a 6.5% immediate annuity rate of interest, and deferred rates of 5.75% and 4.25%. Flo–Con used these rates based on its decision that they constituted the PBGC rates in effect for use in terminations on the first day of 1992, the year preceding Flo–Con's distribution of the plan assets in 1993.

To reach that result Flo–Con relied upon 29 C.F.R. § 2619.26 (1992). This regulation provided in pertinent part:

> (a) *Valuation.*
>
> (1) The value of the lump sum or other alternative form of distribution payable under this section is the present value of the normal form of benefit provided by

the plan payable at normal retirement age, determined as of the date of distribution using reasonable actuarial assumptions as to interest and mortality.

(b) *Actuarial assumptions.*

(1) \*\*\* The PBGC reserves the right to review the actuarial assumptions used and to re-value the benefits determined by the plan administrator if the actuarial assumptions are found to be unreasonable.

(2) The following interest assumptions are among those that will normally be considered reasonable. \*\*\*

> (i) The rate by the plan for determining lump sum amounts prior to the date of termination.

\*      \*      \*      \*      \*      \*

> (iv) The PBGC interest rate for immediate annuities in effect on the valuation date set forth in Appendix B to this part.[2]

As provided by 29 C.F.R. § 2619.26(b)(2)(i), Flo–Con in determining the applicable interest rates chose to apply the rate provided by the Plan in the event of Plan termination, which as set forth above was that PBGC rate in effect on January 1, 1992, "the first day of the Plan Year preceding such termination." The Flo–Con computations resulted in a reversion to Flo–Con of approximately $12,000 after payment of benefits and costs.

In contrast, PBGC in its audit found that current ERISA and IRS statutory provisions required that Flo–Con in terminating the plan apply the PBGC interest rate in effect on the January 1, 1993, the year the Plan's assets were distributed. Using January 1, 1993 as the appropriate date for determining the interest rates, the PBGC concluded that 5.75% was the effective immediate annuity rate of interest, while 5% and 4% comprised the proper deferred annuity rates. PBGC found that the application of the incorrect rates of

interest by Flo–Con resulted in an underpayment to the Plan beneficiaries of approximately $232,000.

Flo–Con argues that it properly relied on 29 C.F.R. § 2619.26, and the discretion granted plans in that section, in selecting the interest rates it employed in distributing the Plan assets in the case at hand. However, the PBGC contends and the court agrees that this regulation which was enacted in 1981 was effectively superseded by subsequent federal statutory measures.

Prior to 1984, it is clear that plan administrators had broad discretion in selecting interest rates for determining lump sum settlements. The PBGC regulations spoke of reasonable actuarial assumptions as to interest rates and mortality. In 1984, Congress ended the discretion embodied in 29 C.F.R. § 2619.26(b)(2) through the enactment of the Retirement Equity Act (29 U.S.C. § 1001 *et seq.*), and the Tax Reform Act.

The Retirement Equity Act, among other things, set a ceiling on interest rates that plans can use to value lump sum distributions by incorporating the rates that PBGC uses to value benefits as the maximum permissible rates. (29 U.S.C. §§ 1053(e), 1055(g), 26 U.S.C. §§ 411(a)(11), 417(e)). In computing lump sum benefits, these statutes as amended additionally require plan administrators to use an interest rate that is no greater than the 'applicable interest rate' for the first $25,000 of a benefit, and no greater than 120% of that rate for benefits in excess of $25,000. (29 U.S.C. §§ 1053(e)(2)(A), 1055(g)(3)(A); 26 U.S.C. §§ 411(a)(11), 417(e)(3)).

The term 'applicable interest rate' is clearly defined by statute as "the interest rate that would be used (as of the date of distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution."[3] *Id.* The "interest rate that

---

**2.** A copy of Appendix B in force in 1992 is attached to this Order as an endnote.

**3.** Section 417(e)(3) of the Code (26 U.S.C. § 417(e)(3)) in relevant part provides:

would be used (as of the date of distribution) by the Pension Benefit Guaranty Corporation" is in turn taken from 29 C.F.R. § 2619.26, Appendix B, which sets forth the immediate and deferred annuity rates employed by the PBGC in determining the present value of plan benefits.[4]

Importantly, although at the time of the Plan termination in this case the PBGC had not yet altered their own regulations to reflect these statutory changes, the above definition of applicable interest was mirrored in the Internal Revenue Service's implementing regulations. Specifically, Treasury Regulation § 1.417(e)–1(d) in relevant part provides:

> § 1.417(e)–1 Restrictions and valuations of distributions from plans subject to sections 401(A)(1) and 417.
>
> (b)(ii) In determining the present value of any nonforfeitable accrued benefit, a defined benefit plan is limited by the interest rate restrictions as set forth in paragraph (d) of this section.
>
> (d) Present value requirement—(1) General rule. A defined benefit plan must provide that the present value of an accrued benefit and the amount (subject to sections 411(c)(3) and 415) of any distribution, including a single sum must not be less than the amount calculated using the applicable interest rate described in paragraph (d)(3)
>
> \*      \*      \*      \*      \*      \*
>
> (3) Applicable interest rate—(i) General rule. The applicable interest rate for a month is the annual interest rate on 30–year Treasury securities \*\*\*

(3) Determination of present value.—
(A) In general.—For purposes of paragraphs (1) and (2), the present value shall be calculated—
(i) by using an interest rate no greater than the applicable interest rate if the vested accrued benefit (using such rate) is not in excess of $25,000, and
(ii) by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 (as determined under clause (i)).

(4) Time for determining interest rate—
(i) General rule. \*\*\* the applicable interest rate to be used for a distribution is the rate determined under paragraph (d)(3) of this section for the applicable lookback month.

(9) Plans beginning before January 1, 1995—(i) Interest rate. (A) For distributions made in plan years beginning after December 31, 1986 and before January 1, 1995, the following interest rate described in paragraph (d)(9)(i)(A)(1) or (2) of this section, whichever applies, is substituted for the applicable interest rate for purposes of this section—

> (1) The rate or rates that would be used by the PBGC for a trusteed single-employer trust to value the participant's (or beneficiary's) vested benefit (PBGC interest rate) if the present value of such benefit does not exceed $25,000; or
>
> (2) 120 percent of the PBGC interest rate, as determined in accordance with paragraph (d)(9)(i)(A)(1) of this section, if such present value exceeds $25,000. In no event shall the present value determined by use of 120 percent of the PBGC interest rate result in a present value of less than $25,000.

(B) The PBGC interest rate may be a series of interest rates for any given date ... The PBGC interest rates are the interest rates that would be used (as of the date of the distribution) by the PBGC for the purposes of determining the present value of that benefit upon termination of an insufficient trusteed single employer plan. Except as other-

In no event shall the present value determined under subclause (II) be less than $25,000. (B) Applicable interest rate.—For purposes of subparagraph (A), the term "applicable interest rate" means the interest rate which would be used (as of the date of distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution of plan termination.

4. A copy of Appendix B in effect in 1993 is also attached as an endnote.

wise provided the Commissioner, the PBGC interest rates are determined by PBGC regulations. See subpart B of 29 CFR part 4044 for applicable PBGC rates.

## DISCUSSION

■ In light of these statutory and regulatory changes, Flo–Con's assertion that it complied with the Plan documents and all applicable statutes and regulations in deciding the appropriate interest rates is just plain wrong. It did not. The amendments to the Code and ERISA discussed above were the controlling statutory enactments that had to be applied by Flo–Con to the termination of its Plan. Instead of applying the provisions that were in effect in 1993, the year of distribution of the Plan's assets, Flo–Con applied termination provisions that would have been proper before 1984.

■ It is well established that an administrative agency regulation that conflicts with a statute is invalid. *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977); *Georgia Dep't of Medical Assistance v. Heckler*, 768 F.2d 1293, 1299 (11th Cir. 1985). The PBGC regulation relied upon by Flo–Con in this case, 29 C.F.R. § 2619.26(b)(2), in giving a plan administrator discretion in choosing the applicable termination interest rates, on its face was in direct conflict with the above statutory amendments requiring that the rate be taken from those PBGC rates in effect *as of the date of the plan's distribution*. Flo–Con consequently had no right to rely on this superseded regulation, but should have looked to these statutory sections and the PBGC for the requisite guidance.

■ Flo–Con's argument that the IRS approved of the termination of the Plan is also without merit. The IRS letter merely said the Plan continued to comply with Code requirements for tax qualification. The IRS letter warned Flo–Con that it also had to comply with other federal law.

Moreover, a letter of tax qualification is not determinative of the validity of a termination. *Hickey v. Chicago Truck Drivers Union*, 980 F.2d 465, 469 (7th Cir. 1992).

The same may be said of the letter from PBGC telling Flo–Con to proceed, which Flo–Con characterizes as the 'no action' letter. In response to Flo–Con's representation that the Plan was solvent, PBGC said to proceed as soon as practicable to commence distribution of the Plan assets and to stop only if Flo–Con found that the assets were not sufficient to pay all liabilities. Flo–Con was admonished that the termination was subject to audit and that records must be maintained for six years. The audit was held and the deficiencies established within two years.

■ Flo–Con may not legitimately rely on failure by the IRS or the PBGC to update or correct superseded regulations. A mistake by an administrative officer does not bar enforcement of the law enacted by Congress. As explained by the United States Supreme Court:

> In *Automobile Club of Michigan v. Commissioner of Internal Revenue* (citation omitted), we held that the Commissioner is empowered retroactively to correct mistakes of law in the application of the tax laws to particular transactions.
>
> He may do so even where a taxpayer may have relied to his detriment on the Commissioner's mistake. (Citation omitted.) This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescribes tax laws.

*Dixon v. United States*, 381 U.S. 68, 72–3, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223 (1965).

Can competent lawyers and accountants engaged in the highly technical task of computing the present cash value of deferred annuities ignore seven year-old relevant amendments to the Code and ERISA and claim estoppel? The question is rhetorical; the answer is "No!" The case

of *Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982), relied on by Flo–Con in support of its equitable estoppel argument, is not to the contrary. Judge Cudahy's exhaustive discussion of the subject indicates that equitable estoppel would not be applied in this case. *Id.,* 674 F.2d at 1158–60, and n. 15.

Even if estoppel were available, it requires the claimant to detrimentally alter its position in reliance on a misrepresentation or failure to disclose some material fact. *Portmann,* 674 F.2d at 1158. Those essential elements are not present in this case.

When the IRS approved the Plan termination for tax qualification, it cautioned that the approval was not a determination with regard to other federal statutes. Similarly, the PBGC letter telling Flo–Con to proceed with its distribution warned that the distribution was subject to audit and that records must be kept for six years. 29 C.F.R. § 2619.26(b)(1) warns specifically that, "The PBGC reserves the right to review the actuarial assumption used and to re-value the benefits determined by the plan administrator if the actuarial assumptions are found to be unreasonable."

The government made no misrepresentation to Flo–Con. Flo–Con told the government that the assets of the Plan were sufficient to pay out lump sum benefits and that the Plan was slightly over-funded. The government didn't tell Flo–Con that the termination based upon Flo–Con's assumptions would be reasonable. PBGC said that it would audit Flo–Con's actions. Where is the detriment to Flo–Con? It is merely being required to do what the law demands.

Finally, Flo–Con makes the surprising argument that the decision in *Piggly Wiggly Southern, Inc. v. PBGC,* 19 Employee Benefits Cases 1163 (N.D.Ala.1995), supports its position. It does not. While the district judge in that case was critical of the clarity of the administrative agency's regulations, he deferred to them for the precise reasons that are discussed here. The decision is very much in point and persuasive that PBGC's position in this case is correct.

■ The lodestar in the application of ERISA is the protection of annuitants. In *Nachman Corporation v. PBGC,* 446 U.S. 359, 360, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), the Court points out the statutory purpose of protecting the anticipated benefits of employees and their beneficiaries, and that the creation of the plan termination insurance program under Title IV of ERISA is one of the means for achieving that purpose. Consequently, Flo–Con must be held to the terms of the statutory provisions, even where they are in conflict with the implementing PBGC regulations.

IT IS THEREFORE ORDERED THAT:

1) The plaintiff's motion for summary judgment (# 16) is denied, and the defendant's motion for summary judgment (# 20) is allowed.

2) The Clerk of the Court is to enter judgment and costs of suit in favor of the defendant-third party plaintiff, Pension Benefit Guaranty Corporation, and against the plaintiff, Flo–Con Systems, Inc., and the third-party defendants Vesuvius USA Corporation, Vesuvius Crucible Company, and Cookson America, Inc.

## ATTACHMENT

**Pension Benefit Guaranty Corporation**

**Pt. 2619, App. B**

TABLE VIa—MORTALITY RATES FOR DISABLED FEMALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued

[For plans that terminate on or after Dec. 1, 1980]

| Age | $q_x$ |
|---|---|
| 77 | .0578 |
| 78 | .0631 |
| 79 | .0686 |
| 80 | .0746 |
| 81 | .0813 |
| 82 | .0885 |
| 83 | .0962 |
| 84 | .1043 |
| 85 | .1128 |
| 86 | .1221 |
| 87 | .1322 |
| 88 | .1432 |
| 89 | .1551 |
| 90 | .1682 |
| 91 | .1825 |
| 92 | .1980 |
| 93 | .2150 |
| 94 | .2330 |
| 95 | .2525 |
| 96 | .2739 |
| 97 | .2972 |
| 98 | .3226 |
| 99 | .3495 |
| 100 | .3789 |
| 101 | .4109 |
| 102 | .4458 |
| 103 | .4838 |
| 104 | .5243 |
| 105 | .5684 |
| 106 | .6164 |

TABLE VIa—MORTALITY RATES FOR DISABLED FEMALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued

[For plans that terminate on or after Dec. 1, 1980]

| Age | $q_x$ |
|---|---|
| 107 | .6687 |
| 108 | .7257 |
| 109 | .7865 |
| 110 | 1.000 |

[46 FR 9497, Jan. 28, 1981; 46 FR 23911, Apr. 28, 1981. Redesignated at 46 FR 32574, June 24, 1981]

APPENDIX B TO PART 2619—INTEREST RATES AND QUANTITIES USED TO VALUE IMMEDIATE AND DEFERRED ANNUITIES

In the table that follows, the immediate annuity rate is used to value immediate annuities, to compute the quantity "$G_y$" for deferred annuities and to value both portions of a refund annuity. An interest rate of 5% shall be used to value death benefits other than the decreasing term insurance portion of a refund annuity. For deferred annuities, $k_1$, $k_2$, $k_3$, $n_1$, and $n_2$ are defined in § 2619.45.

| Rate set | For plans with a valuation date | | Immediate annuity rate | Deferred annuities | | | | |
|---|---|---|---|---|---|---|---|---|
| | On or after | Before | | $k_1$ | $k_2$ | $k_3$ | $n_1$ | $n_2$ |
| 1 | 9-2-74 | 10-1-75 | 8.00 | 1.0725 | 1.0575 | 1.0425 | 7 | 8 |
| 2 | 10-1-75 | 1-1-76 | 7.75 | 1.0725 | 1.0575 | 1.0425 | 7 | 7 |
| 3 | 1-1-76 | 3-1-76 | 8.00 | 1.0725 | 1.0525 | 1.0400 | 7 | 10 |
| 4 | 3-1-76 | 6-1-76 | 7.25 | 1.0700 | 1.0500 | 1.0400 | 7 | 10 |
| 5 | 6-1-76 | 9-1-76 | 7.25 | 1.0675 | 1.0475 | 1.0350 | 7 | 10 |
| 6 | 9-1-76 | 12-1-76 | 7.00 | 1.0600 | 1.0475 | 1.0350 | 8 | 10 |
| 7 | 12-1-76 | 3-1-77 | 7.00 | 1.0625 | 1.0475 | 1.0375 | 7 | 10 |
| 8 | 3-1-77 | 6-1-77 | 7.00 | 1.0600 | 1.0475 | 1.0350 | 8 | 10 |
| 9 | 6-1-77 | 12-1-77 | 6.75 | 1.0625 | 1.0450 | 1.0375 | 8 | 10 |
| 10 | 12-1-77 | 3-1-78 | 6.75 | 1.0625 | 1.0450 | 1.0375 | 8 | 10 |
| 11 | 3-1-78 | 6-1-78 | 7.00 | 1.0625 | 1.0475 | 1.0375 | 7 | 10 |
| 12 | 6-1-78 | 9-1-78 | 7.25 | 1.0675 | 1.0475 | 1.0350 | 7 | 10 |
| 13 | 9-1-78 | 3-1-79 | 7.25 | 1.0675 | 1.0475 | 1.0350 | 7 | 10 |
| 14 | 3-1-79 | 6-1-79 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 15 | 6-1-79 | 9-1-79 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 16 | 9-1-79 | 12-1-79 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 17 | 12-1-79 | 3-1-80 | 8.50 | 1.0775 | 1.0650 | 1.0400 | 7 | 8 |
| 18 | 3-1-80 | 6-1-80 | 8.75 | 1.0800 | 1.0675 | 1.0400 | 7 | 8 |
| 19 | 6-1-80 | 9-1-80 | 8.75 | 1.0800 | 1.0675 | 1.0400 | 7 | 8 |
| 20 | 9-1-80 | 12-1-80 | 9.00 | 1.0825 | 1.0700 | 1.0400 | 7 | 8 |
| 21 | 12-1-80 | 1-1-81 | 9.25 | 1.0850 | 1.0725 | 1.0400 | 7 | 8 |
| 22 | 1-1-81 | 2-1-81 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 23 | 2-1-81 | 4-1-81 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 24 | 4-1-81 | 6-1-81 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 25 | 6-1-81 | 7-1-81 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |
| 26 | 7-1-81 | 8-1-81 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 27 | 8-1-81 | 10-1-81 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |

687

End Note 2

**Pension Benefit Guaranty Corporation**       **Pt. 2619, App. C**

| Rate set | For plans with a valuation date | | Immediate annuity rate | Deferred annuities | | | | |
|---|---|---|---|---|---|---|---|---|
| | On or after | Before | | $i_1$ | $i_2$ | $i_3$ | $n_1$ | $n_2$ |
| 97 | 3-1-92 | 7-1-92 | 6.50 | 1.0575 | 1.0450 | 1.0400 | 7 | 8 |
| 96 | 7-1-92 | .............. | 6.25 | 1.0550 | 1.0425 | 1.0400 | 7 | 8 |

[46 FR 26766, May 15, 1981]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting appendix B of part 2619, see the List of CFR Sections Affected in the Finding Aids section of this volume.

## APPENDIX C TO PART 2619—MORTALITY RATE TABLES

The following tables of $l_x$'s are based on 10,000 lives. These tables correspond to the mortality rates, $q_x$'s given in appendix A.

### TABLE I—MORTALITY TABLE FOR HEALTHY MALE PARTICIPANTS

[For plans that terminate on or after September 2, 1974]

| Age x | $l_x$ |
|---|---|
| 15 | 10,000.0000 |
| 16 | 9,965.6300 |
| 17 | 9,971.5103 |
| 18 | 9,957.8996 |
| 19 | 9,944.2489 |
| 20 | 9,931.2100 |
| 21 | 9,918.6272 |
| 22 | 9,906.5364 |
| 23 | 9,894.9755 |
| 24 | 9,883.6062 |
| 25 | 9,872.4476 |
| 26 | 9,861.5188 |
| 27 | 9,650.8388 |
| 28 | 9,640.4166 |
| 29 | 9,829.7594 |
| 30 | 9,818.8365 |
| 31 | 9,807.6352 |
| 32 | 9,796.1308 |
| 33 | 9,784.2971 |
| 34 | 9,771.6069 |
| 35 | 9,757.9462 |
| 36 | 9,743.1824 |
| 37 | 9,727.1744 |
| 38 | 9,709.7433 |
| 39 | 9,690.8287 |
| 40 | 9,670.2357 |
| 41 | 9,647.7331 |
| 42 | 9,623.0735 |
| 43 | 9,595.9557 |
| 44 | 9,566.2562 |
| 45 | 9,533.6353 |
| 46 | 9,497.7030 |
| 47 | 9,458.0026 |
| 48 | 9,414.1648 |
| 49 | 9,366.1243 |
| 50 | 9,313.5241 |
| 51 | 9,255.8175 |
| 52 | 9,192.3874 |
| 53 | 9,123.0492 |
| 54 | 9,047.5286 |
| 55 | 8,965.8023 |
| 56 | 8,877.2650 |
| 57 | 8,781.2663 |
| 58 | 8,677.0941 |

### TABLE I—MORTALITY TABLE FOR HEALTHY MALE PARTICIPANTS—Continued

[For plans that terminate on or after September 2, 1974]

| Age x | $l_x$ |
|---|---|
| 59 | 8,564.7084 |
| 60 | 8,443.4150 |
| 61 | 8,312.4661 |
| 62 | 8,171.0711 |
| 63 | 8,018.3946 |
| 64 | 7,853.8812 |
| 65 | 7,676.6819 |
| 66 | 7,485.9394 |
| 67 | 7,282.0823 |
| 68 | 7,066.2851 |
| 69 | 6,839.6481 |
| 70 | 6,602.0182 |
| 71 | 6,353.3400 |
| 72 | 6,093.6726 |
| 73 | 5,822.4796 |
| 74 | 5,540.0662 |
| 75 | 5,246.9247 |
| 76 | 4,943.7836 |
| 77 | 4,631.6232 |
| 78 | 4,313.7642 |
| 79 | 3,991.7503 |
| 80 | 3,667.3966 |
| 81 | 3,342.7660 |
| 82 | 3,021.1317 |
| 83 | 2,705.9975 |
| 84 | 2,400.7177 |
| 85 | 2,107.6405 |
| 86 | 1,829.0652 |
| 87 | 1,567.1815 |
| 88 | 1,324.0380 |
| 89 | 1,101.3242 |
| 90 | 900.3755 |
| 91 | 722.0741 |
| 92 | 566.8029 |
| 93 | 434.7475 |
| 94 | 324.9542 |
| 95 | 235.9564 |
| 96 | 165.8415 |
| 97 | 112.3488 |
| 98 | 73.0823 |
| 99 | 45.3940 |
| 100 | 26.7427 |
| 101 | 14.8217 |
| 102 | 7.6505 |
| 103 | 3.8393 |
| 104 | 1.5708 |
| 105 | 0.6026 |
| 106 | 0.1996 |
| 107 | 0.0547 |
| 108 | 0.0117 |
| 109 | 0.0017 |
| 110 | 0.0001 |

End Note 2

**Pt. 2619, App. B**                        **29 CFR Ch. XXVI (7-1-92 Edition)**

| Rate set | For plans with a valuation date | | Immediate annuity rate | Deferred annuities | | | | |
|---|---|---|---|---|---|---|---|---|
| | On or after | Before | | $k_1$ | $k_2$ | $k_3$ | $n_1$ | $n_2$ |
| 28 | 10-1-81 | 11-1-81 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 29 | 11-1-81 | 12-1-81 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 30 | 12-1-81 | 1-1-82 | 11.00 | 1.1025 | 1.0900 | 1.0400 | 7 | 8 |
| 31 | 1-1-82 | 2-1-82 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 32 | 2-1-82 | 3-1-82 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 33 | 3-1-82 | 6-1-82 | 11.00 | 1.1025 | 1.0900 | 1.0400 | 7 | 8 |
| 34 | 6-1-82 | 8-1-82 | 10.75 | 1.1000 | 1.0875 | 1.0400 | -7 | 8 |
| 35 | 8-1-82 | 10-1-82 | 11.00 | 1.1025 | 1.0900 | 1.0400 | 7 | 8 |
| 36 | 10-1-82 | 11-1-82 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 37 | 11-1-82 | 12-1-82 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 38 | 12-1-82 | 1-1-83 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |
| 39 | 1-1-83 | 2-1-83 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 40 | 2-1-83 | 4-1-83 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 41 | 4-1-83 | 6-1-83 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 42 | 6-1-83 | 9-1-83 | 9.25 | 1.0850 | 1.0725 | 1.0400 | 7 | 8 |
| 43 | 9-1-83 | 2-1-84 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 44 | 2-1-84 | 3-1-84 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 45 | 3-1-84 | 4-1-84 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 46 | 4-1-84 | 5-1-84 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 47 | 5-1-84 | 7-1-84 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 48 | 7-1-84 | 8-1-84 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 49 | 8-1-84 | 9-1-84 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 50 | 9-1-84 | 11-1-84 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 51 | 11-1-84 | 12-1-84 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |
| 52 | 12-1-84 | 1-1-85 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 53 | 1-1-85 | 3-1-85 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 54 | 3-1-85 | 4-1-85 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 55 | 4-1-85 | 5-1-85 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 56 | 5-1-85 | 6-1-85 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 57 | 6-1-85 | 7-1-85 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 58 | 7-1-85 | 10-1-85 | 9.25 | 1.0850 | 1.0725 | 1.0400 | 7 | 8 |
| 59 | 10-1-85 | 1-1-86 | 9.00 | 1.0825 | 1.0700 | 1.0400 | 7 | 8 |
| 60 | 1-1-86 | 2-1-86 | 8.75 | 1.0800 | 1.0675 | 1.0400 | 7 | 8 |
| 61 | 2-1-86 | 4-1-86 | 8.50 | 1.0775 | 1.0650 | 1.0400 | 7 | 8 |
| 62 | 4-1-96 | 5-1-86 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 63 | 5-1-86 | 10-1-86 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 64 | 10-1-86 | 11-1-86 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 65 | 11-1-86 | 12-1-86 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 66 | 12-1-86 | 3-1-87 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 67 | 3-1-87 | 6-1-87 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 68 | 6-1-87 | 7-1-87 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 69 | 7-1-87 | 10-1-87 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 70 | 10-1-87 | 11-1-87 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 71 | 11-1-87 | 3-1-88 | 8.25 | 1.0750 | 1.0625 | 1.0400 | 7 | 8 |
| 72 | 3-1-88 | 4-1-88 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 73 | 4-1-88 | 6-1-88 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 74 | 6-1-88 | 9-1-88 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 75 | 9-1-88 | 11-1-88 | 8.25 | 1.0750 | 1.0625 | 1.0400 | 7 | 8 |
| 76 | 11-1-88 | 4-1-89 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 77 | 4-1-89 | 6-1-89 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 78 | 6-1-89 | 8-1-89 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 79 | 8-1-89 | 9-1-89 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 80 | 9-1-89 | 10-1-89 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 81 | 10-1-89 | 12-1-89 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 82 | 12-1-89 | 3-1-90 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 83 | 3-1-90 | 6-1-90 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 84 | 6-1-90 | 7-1-90 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 85 | 7-1-90 | 9-1-90 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 86 | 9-1-90 | 10-1-90 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 87 | 10-1-90 | 11-1-90 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 88 | 11-1-90 | 12-1-90 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 89 | 12-1-90 | 1-1-91 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 90 | 1-1-91 | 3-1-91 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 91 | 3-1-91 | 6-1-91 | 7.00 | 1.0625 | 1.0500 | 1.0400 | 7 | 8 |
| 92 | 6-1-91 | 7-1-91 | 6.75 | 1.0600 | 1.0475 | 1.0400 | 7 | 8 |
| 93 | 07-1-91 | 10-1-91 | 7.00 | 1.0625 | 1.0500 | 1.0400 | 7 | 8 |
| 94 | 10-1-91 | 1-1-92 | 6.75 | 1.0600 | 1.0475 | 1.0400 | 7 | 8 |
| 95 | 1-1-92 | 2-1-92 | 6.50 | 1.0575 | 1.0450 | 1.0400 | 7 | 8 |
| 96 | 2-1-92 | 3-1-92 | 6.25 | 1.0550 | 1.0425 | 1.0400 | 7 | 8 |

End Note 2

1993

Pension Benefit Guaranty Corporation

TABLE VIa—MORTALITY RATES FOR DISABLED FEMALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued

[For plans that terminate on or after Dec. 1, 1980]

| Age | $q_x$ |
|---|---|
| 45 | .0224 |
| 46 | .0229 |
| 47 | .0235 |
| 48 | .0242 |
| 49 | .0249 |
| 50 | .0257 |
| 51 | .0264 |
| 52 | .0272 |
| 53 | .0281 |
| 54 | .0288 |
| 55 | .0295 |
| 56 | .0301 |
| 57 | .0307 |
| 58 | .0315 |
| 59 | .0323 |
| 60 | .0331 |
| 61 | .0339 |
| 62 | .0347 |
| 63 | .0355 |
| 64 | .0362 |
| 65 | .0370 |
| 66 | .0378 |
| 67 | .0386 |
| 68 | .0394 |
| 69 | .0402 |
| 70 | .0411 |
| 71 | .0421 |
| 72 | .0433 |
| 73 | .0447 |
| 74 | .0455 |
| 75 | .0492 |
| 76 | .0529 |
| 77 | .0578 |
| 78 | .0631 |
| 79 | .0686 |
| 80 | .0746 |
| 81 | .0813 |
| 82 | .0885 |
| 83 | .0962 |
| 84 | .1043 |
| 85 | .1128 |
| 86 | .1221 |
| 87 | .1322 |
| 88 | .1432 |
| 89 | .1551 |
| 90 | .1682 |

TABLE VIa—MORTALITY RATES FOR DISABLED FEMALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued

[For plans that terminate on or after Dec. 1, 1980]

| Age | $q_x$ |
|---|---|
| 91 | .1825 |
| 92 | .1980 |
| 93 | .2150 |
| 94 | .2330 |
| 95 | .2525 |
| 96 | .2739 |
| 97 | .2972 |
| 98 | .3226 |
| 99 | .3495 |
| 100 | .3789 |
| 101 | .4109 |
| 102 | .4458 |
| 103 | .4838 |
| 104 | .5243 |
| 105 | .5684 |
| 106 | .6164 |
| 107 | .6687 |
| 108 | .7257 |
| 109 | .7865 |
| 110 | .1.000 |

[46 FR 9497, Jan. 28, 1981; 46 FR 23911, Apr. 28, 1981. Redesignated at 46 FR 32574, June 24, 1981]

APPENDIX B TO PART 2619—INTEREST RATES AND QUANTITIES USED TO VALUE IMMEDIATE AND DEFERRED ANNUITIES

In the table that follows, the immediate annuity rate is used to value immediate annuities, to compute the quantity "$G_y$," for deferred annuities and to value both portions of a refund annuity. An interest rate of 5% shall be used to value death benefits other than the decreasing term insurance portion of a refund annuity. For deferred annuities, $k_1$, $k_2$, $k_3$, $n_1$, and $n_2$ are defined in § 2619.45.

| Rate set | For plans with a valuation date | | Immediate annuity rate | Deferred annuities | | | | |
|---|---|---|---|---|---|---|---|---|
| | On or after | Before | | $k_1$ | $k_2$ | $k_3$ | $n_1$ | $n_2$ |
| 1 | 9-2-74 | 10-1-75 | †8.00 | 1.0725 | 1.0575 | 1.0425 | 7 | 8 |
| 2 | 10-1-75 | 1-1-76 | 7.75 | 1.0725 | 1.0575 | 1.0425 | 7 | 7 |
| 3 | 1-1-76 | 3-1-76 | 8.00 | 1.0725 | 1.0525 | 1.0400 | 7 | 10 |
| 4 | 3-1-76 | 6-1-76 | 7.25 | 1.0700 | 1.0500 | 1.0400 | 7 | 10 |
| 5 | 6-1-76 | 9-1-76 | 7.25 | 1.0675 | 1.0475 | 1.0350 | 7 | 10 |
| 6 | 9-1-76 | 12-1-76 | 7.00 | 1.0600 | 1.0475 | 1.0350 | 8 | 10 |
| 7 | 12-1-76 | 3-1-77 | 7.00 | 1.0625 | 1.0475 | 1.0375 | 7 | 10 |
| 8 | 3-1-77 | 6-1-77 | 7.00 | 1.0600 | 1.0475 | 1.0350 | 8 | 10 |
| 9 | 6-1-77 | 12-1-77 | 6.75 | 1.0625 | 1.0450 | 1.0375 | 8 | 10 |
| 10 | 12-1-77 | 3-1-78 | 6.75 | 1.0625 | 1.0450 | 1.0375 | 8 | 10 |
| 11 | 3-1-78 | 6-1-78 | 7.00 | 1.0625 | 1.0475 | 1.0375 | 7 | 10 |
| 12 | 6-1-78 | 9-1-78 | 7.25 | 1.0675 | 1.0475 | 1.0350 | 7 | 10 |
| 13 | 9-1-78 | 3-1-79 | 7.25 | 1.0675 | 1.0475 | 1.0350 | 7 | 10 |
| 14 | 3-1-79 | 6-1-79 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 15 | 6-1-79 | 9-1-79 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 16 | 9-1-79 | 12-1-79 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |

End Note 3

Pt. 2619, App. B  29 CFR Ch. XXVI (7-1-93 Edition)

| Rate set | For plans with a valuation date | | Immediate annuity rate | Deferred annuities | | | | |
|---|---|---|---|---|---|---|---|---|
| | On or after | Before | | $k_1$ | $k_2$ | $k_3$ | $n_1$ | $n_2$ |
| 17 | 12-1-79 | 3-1-80 | 8.50 | 1.0775 | 1.0650 | 1.0400 | 7 | 8 |
| 18 | 3-1-80 | 6-1-80 | 8.75 | 1.0800 | 1.0675 | 1.0400 | 7 | 8 |
| 19 | 6-1-80 | 9-1-80 | 8.75 | 1.0800 | 1.0675 | 1.0400 | 7 | 8 |
| 20 | 9-1-80 | 12-1-80 | 9.00 | 1.0825 | 1.0700 | 1.0400 | 7 | 8 |
| 21 | 12-1-80 | 1-1-81 | 9.25 | 1.0850 | 1.0725 | 1.0400 | 7 | 8 |
| 22 | 1-1-81 | 2-1-81 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 23 | 2-1-81 | 4-1-81 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 24 | 4-1-81 | 6-1-81 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 25 | 6-1-81 | 7-1-81 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |
| 26 | 7-1-81 | 8-1-81 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 27 | 8-1-81 | 10-1-81 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |
| 28 | 10-1-81 | 11-1-81 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 29 | 11-1-81 | 12-1-81 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 30 | 12-1-81 | 1-1-82 | 11.00 | 1.1025 | 1.0900 | 1.0400 | 7 | 8 |
| 31 | 1-1-82 | 2-1-82 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 32 | 2-1-82 | 3-1-82 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 33 | 3-1-82 | 6-1-82 | 11.00 | 1.1025 | 1.0900 | 1.0400 | 7 | 8 |
| 34 | 6-1-82 | 8-1-82 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 35 | 8-1-82 | 10-1-82 | 11.00 | 1.1025 | 1.0900 | 1.0400 | 7 | 8 |
| 36 | 10-1-82 | 11-1-82 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 37 | 11-1-82 | 12-1-82 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 38 | 12-1-82 | 1-1-83 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |
| 39 | 1-1-83 | 2-1-83 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 40 | 2-1-83 | 4-1-83 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 41 | 4-1-83 | 6-1-83 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 42 | 6-1-83 | 9-1-83 | 9.25 | 1.0850 | 1.0725 | 1.0400 | 7 | 8 |
| 43 | 9-1-83 | 2-1-84 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 44 | 2-1-84 | 3-1-84 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 45 | 3-1-84 | 4-1-84 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 46 | 4-1-84 | 5-1-84 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 47 | 5-1-84 | 7-1-84 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 48 | 7-1-84 | 8-1-84 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 49 | 8-1-84 | 9-1-84 | 10.75 | 1.1000 | 1.0875 | 1.0400 | 7 | 8 |
| 50 | 9-1-84 | 11-1-84 | 10.50 | 1.0975 | 1.0850 | 1.0400 | 7 | 8 |
| 51 | 11-1-84 | 12-1-84 | 10.25 | 1.0950 | 1.0825 | 1.0400 | 7 | 8 |
| 52 | 12-1-84 | 1-1-85 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 53 | 1-1-85 | 3-1-85 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 54 | 3-1-85 | 4-1-85 | 9.50 | 1.0875 | 1.0750 | 1.0400 | 7 | 8 |
| 55 | 4-1-85 | 5-1-85 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 56 | 5-1-85 | 6-1-85 | 10.00 | 1.0925 | 1.0800 | 1.0400 | 7 | 8 |
| 57 | 6-1-85 | 7-1-85 | 9.75 | 1.0900 | 1.0775 | 1.0400 | 7 | 8 |
| 58 | 7-1-85 | 10-1-85 | 9.25 | 1.0850 | 1.0725 | 1.0400 | 7 | 8 |
| 59 | 10-1-85 | 1-1-86 | 9.00 | 1.0825 | 1.0700 | 1.0400 | 7 | 8 |
| 60 | 1-1-86 | 2-1-86 | 8.75 | 1.0800 | 1.0675 | 1.0400 | 7 | 8 |
| 61 | 2-1-86 | 4-1-86 | 8.50 | 1.0775 | 1.0650 | 1.0400 | 7 | 8 |
| 62 | 4-1-86 | 5-1-86 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 63 | 5-1-86 | 10-1-86 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 64 | 10-1-86 | 11-1-86 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 65 | 11-1-86 | 12-1-86 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 66 | 12-1-86 | 3-1-87 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 67 | 3-1-87 | 6-1-87 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 68 | 6-1-87 | 7-1-87 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 69 | 7-1-87 | 10-1-87 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 70 | 10-1-87 | 11-1-87 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 71 | 11-1-87 | 3-1-88 | 8.25 | 1.0750 | 1.0625 | 1.0400 | 7 | 8 |
| 72 | 3-1-88 | 4-1-88 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 73 | 4-1-88 | 6-1-88 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 74 | 6-1-88 | 9-1-88 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 75 | 9-1-88 | 11-1-88 | 8.25 | 1.0750 | 1.0625 | 1.0400 | 7 | 8 |
| 76 | 11-1-88 | 4-1-89 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 6 |
| 77 | 4-1-89 | 6-1-89 | 8.00 | 1.0725 | 1.0600 | 1.0400 | 7 | 8 |
| 78 | 6-1-89 | 8-1-89 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 79 | 8-1-89 | 9-1-89 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 80 | 9-1-89 | 10-1-89 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 81 | 10-1-89 | 12-1-89 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 82 | 12-1-89 | 3-1-90 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 83 | 3-1-90 | 6-1-90 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 84 | 6-1-90 | 7-1-90 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |
| 85 | 7-1-90 | 9-1-90 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 86 | 9-1-90 | 10-1-90 | 7.25 | 1.0650 | 1.0525 | 1.0400 | 7 | 8 |
| 87 | 10-1-90 | 11-1-90 | 7.50 | 1.0675 | 1.0550 | 1.0400 | 7 | 8 |
| 88 | 11-1-90 | 12-1-90 | 7.75 | 1.0700 | 1.0575 | 1.0400 | 7 | 8 |

End Note 3